**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PENROSE PARK ASSOCIATES, L.P. | : | |
| Plaintiff, | | |
| v. | : | CIVIL ACTION NO. 18-0730 |
| UNITED STATES OF AMERICA, *acting through the* DEFENSE LOGISTICS AGENCY; and, PENNONI ASSOCIATES, INC. | : | |
| Defendants. | : | |

**MEMORANDUM**

**Jones, II    J.**                                                                                                       **July 31, 2018**

**I.    Introduction**

Plaintiff Penrose Park Associates, L.P. brings the above-referenced action asserting claims for Failure to Properly Remediate Land Under the Hazardous Sites Cleanup Act of 1988, 35 P.S. §§ 6020.101 *et seq.* (Count I); Negligent Retention of a Contractor (Count II); Negligent Supervision of a Contractor (Count III); Breach of Contract (Count IV); Breach of Express Warranty (Count V); Breach of Implied Warranty of Merchantability (Count VI); and Breach of Implied Warranty of Fitness For a Particular Purpose (Count VII). (Am. Compl., ECF No. 7.) Presently before this Court is Defendant United States of America's ("United States") Motion to Dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. For the reasons set forth below, Defendant's Motion shall be granted.

## II. Factual Background

The present case arises from the "design, installation and/or repair of vapor barriers" which resulted in "injury" to Plaintiff's property, Siena Place. (Am. Compl. ¶ 9.) Siena Place was previously owned by the Defense Logistics Agency ("DLA"), which operated a manufacturing and supply depot for the United States military. (Am. Compl. ¶ 10.) On December 10, 1999, the Pennsylvania Department of Environmental Protection ("PaDEP") ordered the DLA to remediate a napthalene plume that developed in the soil on the land now occupied by Siena Place. (Am. Compl. ¶ 11.) On or about September 20, 2017, Plaintiff purchased Siena Place from the Philadelphia Housing Authority. (Am. Compl. ¶ 15.) Plaintiff granted the DLA an easement to allow the agency and its contractor the right to enter the land in order to install or repair the vapor barriers at any points in time, in accordance with the PaDEP's 1999 order. (Am. Compl. ¶ 16.) The easement further provided that the DLA was required to "fund the cost for the installation of vapor barriers underneath to-be-constructed residential or commercial buildings on the [p]roperty." (Am. Compl. ¶ 12.) Additionally, the vapor barriers would "be installed by a fully-insured, licensed and responsible contractor who shall provide appropriate warranties protecting [Penrose Park] against defects in material and workmanship in the vapor barriers used." (Am. Compl. ¶ 13.) With respect to any potential disputes regarding its terms, the easement stated that "any action commenced to enforce these terms of access shall be brought in the United States District Court for the Eastern District of Pennsylvania." (Am. Compl. ¶ 17; Am. Compl. Ex. E ¶ 21.) To satisfy the terms of the easement, the DLA hired Fullard Environmental Controls, Inc. ("Fullard") for the remediation work, and Defendant Pennoni Associates, Inc. ("Pennoni") was hired as a sub-contractor. (Am. Compl. ¶ 18.)

Plaintiff alleges that sometime around October 2016, residents of two separate properties at Siena Place reported that "'petroleum-like' vapors were emanating from their properties." (Am. Compl. ¶ 21.) Plaintiff claims the vapor barriers failed, causing naphthalene plume gases to leak into the aforementioned properties. (Am. Compl. ¶ 22.) As a result, Plaintiff contends it incurred "substantial expenses to repair the houses, relocate families and sustained harm to its reputation for building quality, residential homes." (Am. Compl. ¶ 23.) Plaintiff now seeks monetary damages for the "injury and/or loss to its property." (Am. Compl. ¶ 27.)

### III. Standard of Review

A challenge to subject matter jurisdiction under Rule 12(b)(1) may take two forms: a facial challenge or a factual challenge. If a facial challenge concerns an alleged pleading deficiency, the trial court is restricted to a review of the allegations of the complaint and any documents referenced therein. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *Gould Elec. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000). When considering a facial challenge, "the trial court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A factual challenge "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA*, 535 F.3d at 139 (internal quotation, citation, and alterations omitted). If the challenge before the trial court is a factual challenge, the court does not accord any presumption of truth to the allegations in the plaintiff's Complaint, and the plaintiff bears the burden of proving subject-matter jurisdiction. *Id.* With a factual challenge, the court may weigh evidence outside the pleadings and make factual findings related to the issue of jurisdiction. *Id.*; *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir.

2007). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen*, 549 F.2d at 891.

IV. **Discussion**

In bringing its claims, Plaintiff invokes the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), to confer jurisdiction upon this court. (Am. Compl. ¶ 4.) The United States argues in its Motion to Dismiss that this Court does not have subject matter jurisdiction because: (1) subject matter jurisdiction cannot be conferred by agreement of the parties; (2) the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over breach of contract claims against the United States; and, (3) Plaintiff failed to exhaust administrative remedies as required by the FTCA. (Def.'s Mot. Dismiss 1.)

### A. The Forum Selection Clause in the Easement Is Inapplicable Because Parties Cannot Confer Subject Matter Jurisdiction on Federal Courts

As stated above, the easement Plaintiff granted the DLA contained a forum selection clause, which provides: "So long as not prohibited by law, any action commenced to enforce these terms of access shall be brought in the United States District Court for the Eastern District of Pennsylvania." (Am. Compl. Ex. E ¶ 21.) The United States now argues that the forum selection clause is invalid "because parties to an agreement cannot unilaterally confer subject matter jurisdiction" on a federal court, and even if they could, the clause does not apply to the instant case. (Def.'s Mot. Dismiss 4-5.)

It is well settled that "no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant." *Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 702 (U.S. 1982); *see also Wharton-Thomas v. United States*, 721 F.2d 922, 926 (3d Cir. 1983) (recognizing that the limits of subject matter jurisdiction are prescribed by the United States Constitutional and individual federal statutes,

4

therefore it cannot be conferred or waived); *Spectacor Mgmt. Group v. Brown,* 131 F.3d 120, 125 (3d Cir. 1997) (noting federal jurisdiction cannot be conferred by agreement of parties, as it "arises under the constitution. It is not created by contract or waiver."); *Stewart v. JPMorgan Chase Bank, N.A.* (*In re Stewart*), 473 B.R. 612, 627 (Bankr. W.D. Pa. 2012) ("The Supreme Court has consistently held that parties cannot consent to create subject matter jurisdiction where it does not otherwise exist.").

Since subject matter jurisdiction cannot be conferred upon this Court by agreement of the parties, the forum selection clause contained in the easement—in and of itself—is not an appropriate basis for jurisdiction in this case.

### B. Jurisdiction for Contract Claims Against the United States Are Exclusively Vested in the Court of Federal Claims by the Tucker Act

The United States further argues that Plaintiff's claims are governed by the Tucker Act because they allege contract violations based on the terms of the easement; therefore, subject matter jurisdiction is vested exclusively with the Court of Federal Claims. (Def.'s Mot. Dismiss 5.)

The Tucker Act provides in pertinent part: "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded…upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Additionally, the Act requires the amount in controversy to be in excess of $10,000 in order to proceed to Federal Claims Court. 28 U.S.C. § 1346(a)(2); *see also Hahn v. United States*, 757 F.2d 581, 586 (3d Cir. 1985) (explaining that the Tucker Acts grants the Court of Federal Claims exclusive jurisdiction over all non-tort claims exceeding $10,000). "[U]nder the terms of the Tucker Act, [ ] the United

States waives its sovereign immunity . . . and this consent to suit is a jurisdictional prerequisite." *Hahn*, 757 F.2d at 586.

Here, Counts IV through VII of Plaintiff's Amended Complaint allege contract violations against the United States and independently seek damages in excess of $10,000. (Am. Compl. 10-15.) However, Counts I through III allege negligence claims which are founded in tort. (Am. Compl. 5-10.) Therefore, Counts IV through VII are under the exclusive jurisdiction of the Federal Claims Court. This Court does not have subject matter jurisdiction over same and they are hereby dismissed.

### C. Plaintiff Failed to Exhaust Its Administrative Remedies Under the FTCA

In its Amended Complaint, Plaintiff submits that this Court has jurisdiction by reason of the FTCA. (Am. Compl. ¶ 4.) However, the United States argues that the FTCA cannot be used as a jurisdictional basis because Plaintiff failed to exhaust administrative remedies. (Def.'s Mot. Dismiss 8.) Specifically, the United States contends that any claim not covered by the Tucker Act should be dismissed based on Plaintiff's failure to fulfill this jurisdictional requirement. (Def.'s Mot. Dismiss 9.)

Inasmuch as the United States is asserting this Court does not have subject matter jurisdiction based on the facts alleged, the present Motion to Dismiss is a factual challenge. A factual challenge "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). As previously discussed, in cases involving a factual challenge, the court may consider evidence outside of the pleadings to determine subject matter jurisdiction. *Id.*; *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). Accordingly, the district court may take into account materials presented in Defendant's Motion to Dismiss,

along with any other "*related submissions*." *See CNA*, 535 F.3d at 139 (emphasis in original). Furthermore, if the defendant presents evidence contesting jurisdiction, "the court must permit the plaintiff to respond with evidence supporting jurisdiction." *Gould Elecs.*, 220 F.3d at 177. The court may then determine jurisdiction based on the submissions of both parties. *Id.* Therefore, this Court shall consider Plaintiff's Opposition and Surreply to Defendant's Motion to Dismiss, as well as any attachments thereto, in order to appropriately evaluate subject matter jurisdiction in the present case.

"The FTCA operates as a limited waiver of the United States's sovereign immunity." *White-Squire v. United Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010); *see also Kieffer v. Vilk*, 8 F. Supp. 2d 387, 392 (D. N.J. 1998) ("Pursuant to the FTCA, the United States has consented to being sued in tort under certain limited circumstances.") (citing 28 U.S.C. § 2674). The FTCA vests district courts with "exclusive jurisdiction" for civil claims against the United States "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b). However, the FTCA requires exhaustion of administrative remedies before the matter may proceed to federal court. *Kieffer*, 8 F. Supp. 2d at 395. This exhaustion requirement is strictly construed—"the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) (citing *Livera v. First Nat'l State Bank of New Jersey*, 879 F.2d 1186, 1194 (3d Cir. 1989)); *see also Medina v. City of Philadelphia,* 219 F. App'x 169, 171-72 (3d Cir. 2007) (reiterating that the FTCA's "presentment requirement and limitation periods are considered jurisdictional"); *Kieffer,* 8 F. Supp. 2d at 395 ("The fulfillment of the administrative exhaustion requirement is [] essential to a court's subject matter jurisdiction over a claim under

the FTCA."). Therefore, the claimant must "present[] his claim to the appropriate federal agency and receive[] a final decision in writing by the agency" before the federal district courts have jurisdiction. *Miller v. United States*, 517 F. App'x 62, 63 (3d Cir. 2013); *see also Accolla v. United States*, 369 F. App'x 408, 409-10 (3d Cir. 2010) (affirming dismissal of claims brought pursuant to the FTCA for failure to first exhaust administrative remedies). However, if the federal agency fails to issue a final decision within six (6) months from the time the claim was filed, the claimant may treat this failure to act as a final decision. *Accolla*, 369 F. App'x at 410.

The burden is on the plaintiff to prove administrative remedies have been exhausted before filing suit in federal court. *Medina*, 219 F. App'x at 172. Specifically, "a plaintiff must demonstrate that the appropriate federal agency actually received the claim." *Id.* (citing 28 C.F.R. § 14.2(a)). Adequate notice of a claim requires the claimant to "(1) give[] the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) place[] a value on his or her claim." *Roma*, 344 F.3d at 362-63 (quoting *Tucker v. United States Postal Serv.*, 676 F.2d 954, 959 (3d Cir. 1983)); *see also Owens v. United States*, 307 F. Supp. 2d 661, 665 (E.D. Pa. 2004) (explaining that administrative notice is adequate to confer jurisdiction on a federal court if the documents submitted to the government agency provide sufficient notice to enable investigation and settlement). An administrative claim does not need to present "every possible theory of liability"; however, "a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." *Roma*, 344 F.3d at 362 (quoting *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011-12 (7th Cir. 1991)). Instead, the plaintiff must provide sufficient notice to allow the appropriate agency to investigate all relevant claims asserted against it, and "place[] a value on his or her claim" to enable settlement. *Id.* at 363.

In this case, the United States contends Plaintiff failed to provide any documents in its Amended Complaint to demonstrate that it exhausted administrative remedies. (Def.'s Mot. Dismiss 9.) This Court's review of said Complaint reveals same. Furthermore, in its Motion to Dismiss, the United States submits a Declaration of Lieutenant Colonel David O. Anglin, the Chief of the Tort Claims Division for the U.S. Army Claims Service. (Def.'s Mot. Dismiss Ex. 1.) Lieutenant Colonel Anglin stated that he is "responsible for overseeing the administrative tort claims" for his office, and a "review of the computerized case tracking system . . . did not reveal any FTCA claims presented to [his] office by the plaintiff." (Def.'s Mot. Dismiss Ex. 1.)

However, Plaintiff has filed an Opposition to the instant Motion, which includes documents in support of its argument that it did exhaust administrative remedies before commencing suit. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. 1, A-C.) In particular, Plaintiff submits the affidavit of Attorney Timothy J. Bergère, stating that he represented Penrose Park Associates, L.P. in connection with the installation of the vapor barriers by the DLA. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. 1.) Mr. Bergère also stated that he sent two letters on behalf of Plaintiff to the DLA and had a subsequent e-mail exchange with Anil K. Mehta, General Counsel for DLA's Environment & Installations program. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. 1.)

The first letter, dated January 11, 2017, was sent to Kevin Kivimaki of the DLA's Defense Environmental Restoration Program, and Timothy A. Raezer, Esquire, Assistant Counsel for DLA. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. A.) The letter was captioned "NOTICE OF FAILURE OF VAPOR PROTECTION BARRIER." (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. A.) The stated purpose of the letter was "to make a formal Notice of Claim regarding the vapor barrier installation work performed." (Pl.'s Reply Opp'n Def.'s Mot.

Dismiss, Ex. A.) The letter repeatedly mentioned the easement and breach of warranties, and specifically discussed a "preliminary itemization of costs incurred as a direct and proximate result of the *breach of warranties*." (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. A.) (emphasis added). Further, the letter claimed "to date, those costs exceed $223,000"; however, no itemization of costs was included. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. A.) Finally, the letter requested to schedule a meeting to "discuss this matter . . . in the hope that we can resolve it short of litigation." (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. A.)

On January 23, 2017, a second letter was sent to James M. Coyne, Esquire, DLA General Counsel. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. B.) The second letter requested that the notice be directed "to whatever attorney has now been assigned to DLA matters related to the naphthalene plume from former Phila. Naval Yard operations." (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. A.) Plaintiff also provided a copy of the email exchange with Anil K. Mehta at the DLA Office of General Counsel, dated February 23, 2017. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. C.) The email stated that the January 11, 2017 letter had been received, and that DLA had contacted their contracting agent to evaluate the matter. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. C.) The email further stated that "it would take until the end of March to look at all *contracts, warranties, and job completion reports*." (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. C) (emphasis added). According to Mr. Bergère's affidavit, the DLA did not take any further action in response to the matter. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. A.) Plaintiff commenced suit on February 20, 2018, almost a year after Mr. Mehta confirmed receipt of the "Notice of Claim" letter.

Notwithstanding Mr. Bergère's affidavit and the written communications between the parties, Plaintiff has failed to exhaust administrative remedies for Counts I through III. Said

claims are all tort claims: Count I alleges that the DLA acted negligently under the Hazardous Sites Cleanup Act of 1988, Count II alleges negligent retention of a contractor, and Count III alleges negligent supervision of a contractor. (Am. Compl. 5, 7, 9.) However, Plaintiff repeatedly refers to failure of the barrier and "breach of warranties" in its administrative claims letter; said letter is devoid of any reference to negligent conduct. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss 6-7, Ex. A.) Review of the DLA's responses demonstrates that the DLA was not aware of any possible tort claims. (Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Exs. A, C) (emphasis added). In fact, the first time any tort claims were ever mentioned, was in Plaintiff's Amended Complaint that was filed on March 9, 2018. (*compare* Plaintiff's Complaint (ECF No. 1), *with* Plaintiff's Amended Complaint (ECF No. 7).)

Plaintiff's purported attempt to exhaust administrative remedies falls short of the adequate notice requirements. In its communications with the DLA's counsel, Plaintiff failed to reference any negligence by Defendant, its employees, or its subcontractors, let alone provide the specific allegations contained within its Amended Complaint. Instead, the claim presented to the DLA was based solely upon the underlying contract and the damages Plaintiff allegedly sustained as a result of an alleged breach thereof, *i.e.*, "defective materials and/or workmanship, in breach of DLA's duties and obligations and in violation of applicable warranties, including in particular, the fitness of the barriers to serve their intended purpose[.]" ((Pl.'s Reply Opp'n Def.'s Mot. Dismiss, Ex. A.) Consequently, the DLA was not given adequate notice to investigate the negligence claims alleged in Plaintiff's Amended Complaint prior to the commencement of suit in federal court.

Inasmuch as Plaintiff failed to exhaust its administrative remedies under the FTCA, Counts I through III of Plaintiff's Amended Complaint shall be dismissed.

## V. Conclusion

For the reasons set forth above, Defendant United States' Motion to Dismiss Plaintiff's Amended Complaint shall be granted. This Court declines to exercise supplemental jurisdiction over the remaining state law claims against Defendant Pennoni Associates, Inc. and the same are dismissed without prejudice to any right Plaintiff might have to pursue these claims in State court.[1]

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II    J.

---

[1] *See Abulkhair v. Google LLC,* No. 18-1584, 2018 U.S. App. LEXIS 16476, at *3 (3d Cir. 2018) ("[B]ecause all of Abulkhair's federal claims were subject to dismissal, it was appropriate to dismiss his state-law claims, too.") (citing *Hedges v. Musco,* 204 F.3d 109, 123 (3d Cir. 2000)); *Edelstein v. Wilentz,* 812 F.2d 128, 134 (3d Cir. 1987) (affirming district court's "refusal to exercise [supplemental] jurisdiction over a state law claim after dismissal of all federal claims prior to trial.").